May it please the Court, Counsel, my name is Ken Folliver. I appear on behalf of the Lockwood School District. I'm not too sure how this equipment works, but if I could have a warning at 12 minutes, I'd appreciate it. At 12 minutes elapsed or 12 minutes remaining? At 12 minutes elapsed, sir. The clock will say 8 when that happens. It's counting down. Catalog man in a digital age. To begin the argument this morning, I know the Court has read the briefs and is acquainted with the case, so I'd like to jump directly into the issue of deprivation. This case arises concerning a contract that provided a promise to pay the monthly premiums as they arose for health insurance. For purposes of federal questions, I think the two promises involved are identical. One was a promise to make those payments for 10 years. The other was a promise to make those payments for a lifetime. What occurred was the promise last made was for a lifetime in 1995. Years later, in 2001 as I recall, a new school board was going through its budget and wondering why its superintendent's health insurance was so high. After investigation, it discovered it was because the district was paying not only the insurance for the sitting superintendent, but for the past superintendent. Lockwood School District's health insurance program provided health insurance for active employees. Once an employee retired from the district, the program provided eligibility for the group plan, but the district did not pay the premiums. So the promise here made that is at issue was made basically identical for constitutional purposes. But I'll focus on the 1995 promise to make the payments as they arose for the McCracken's lifetime. Mr. Toliver, you may not want to get to this now, but you said that for constitutional purposes, you regard the two commitments as identical. But I think you also have a position under state law, or at least your client was advised by counsel, I take it, that under state law, a superintendent couldn't be compensated for years past the superintendent's tenure. Now, is it the board's position that that was true with respect to the 10 years past retirement commitment, as it also was with respect to the lifetime tenure? The state law issues with respect to the two promises are similar in some respects and different in others. With respect to the subject of consideration required under Montana law for a valid contract, I think the 10-year promise clearly has consideration. It was integrated within the employment agreement. With respect to the lifetime promise, that occurred on March 15, 1995. Months earlier, in the fall of 1994, Mr. McCracken had noticed the board, I will retire June 1995. I understand there would be a difference with respect to the consideration argument, but how about the statute? Under the statute, I think the prohibition is absolute. For reasons sufficient to the Montana legislature, they restricted the board's ability to contract with the superintendents beyond certain terms that are set out in the statute. As I interpret that statute, the prohibition is the term of the contract may not exceed, and then there's a schedule. And I think that encompasses the entirety of the contract. There is nothing within the statute that says the term must be no more than three years, or in some cases, no more than one, except for deferred compensation, gifts, gold watches, etc. Is that an issue that the district court decided on summary judgment? The district court decided that issue against the district, Your Honor. On summary judgment? Yes, Your Honor. And you appealed that? We have, Your Honor. By the way, by the way, it seems to be some disagreement between you and the plaintiffs as to whether or not you appealed from the tort judgment. We paid the tort judgment, Your Honor. All right. But we do not believe that the payment of the judgment limited the breadth of our appeal, and we intended to appeal the entire case, including the tort judgment. But did your notice of appeal include an appeal from the judgment of May 28th? Yes, Your Honor. So the school board couldn't provide for retirement benefits? We believe not, Your Honor. Those are provided for by statute statewide in Montana by the legislature. Our system of school funding involves both local and state funds. Our system of retirement, good or bad, for good or ill, is uniform throughout the state for all educators. On to deprivation. Concerned that the promise for a lifetime was inappropriate, on August, in August, I believe, 29th of 2001, the board announced by resolution, after some contact with Mr. McCracken, we intend to quit making the payments after December 31st of this year. So, in effect, the resolution was, we will pay for at least another 120 days, then we intend to quit. On December 19th of that year, the board resolved to continue to make the payments until the court had finally decided whether or not the payments were required to be made or were, in fact, invalid. My point is that there never has been an instance, any month, any time, where the contract has not been performed, even though the board questions its validity. And why should we care about that? I mean, what does that point go to? Because a cause of action under Section 1983 requires a deprivation of the claimed constitutional right. Are you saying, then, you can have anticipatory breach under state contract law but not under 1983? I think an anticipatory breach is non-actionable under 1983. But the board is very clearly indicated its intention not to pay, and the only reason it is continuing to pay is dependency of the lawsuit. Isn't that right? No, I think the board's resolutions are its only indication of intention. The December 19th resolution, Your Honor, states it is our intention to pay until a court determines whether we should continue to pay or we should stop paying. I think that's what I just said, is to say it's continuing to pay pending the outcome of the lawsuit, but only because there's a lawsuit pending. If there were no such lawsuit, it says, listen, we think we're out of here. At any rate, your point is what, that that type of breach does not constitute a deprivation of property? Is that your point? My point is that where the claimed protected right is a right to receive payments of money, that if the payments of money are made, a deprivation of the right has not occurred in law. But 1983 also covers a threatened deprivation. There's lots of cases involving threats, right? I don't think there are lots of cases involving threats. In fact, the district court could find but one. I think the element of the cause of action that a deprivation occur without due process tends to eviscerate the concept of a threatened deprivation. In other words, if the deprivation has not yet occurred, the due process right cannot get it. But isn't the more fundamental question whether or not 1983 covers a breach of contract at all? I would agree that is the more fundamental question. I started with what I thought was the easiest of the two questions. Easier for whom? Easier for the courts. For us? I think so. I think the lack of deprivation is dispositive of the case, and I don't know whether it's easier or not. Perhaps it's easier for me to discuss. Well, except that some contractual breaches are covered by 1983, right? There's indication in the cases, Your Honor, that where the deprivation of a right arising by contract concerns the right to the present dominion and control over property or the right to pursue gainful employment. In those two instances, we're confident under current law that 1983 applies. This case involves neither. It's not even a right to have health insurance benefits. It's only a right to have someone else pay for them. Under the school district's plan, all retired employees were eligible. Only the McCrackens, and this is unfortunate, but Montana's not a wealthy state, only the McCrackens were singled out to have the district from their budget pay for their life insurance for life. As we turn to the either more difficult or more easy issue, and I see the Court is about to pose a question. Yes. Obviously, you've not named the case, but the case you're referring to is the Lujan G&G pipe sprinklers case, Chief Justice Rehnquist's opinion, which lays out this line between ordinary breach of contract case and a cognizable 1983 action. What if we were to conclude that there is no 1983 action, but that the state law causes of action were valid, and that as to the jury's decision that there's a state law recovery available, what do we then do with the jury verdict that seems not to differentiate in terms of its damage award between the 1983 and the state law causes of action? Thorny question, given the posture in which the case proceeded. I believe, under the cases that we cite in our brief, and if only my memory were better, they would roll off my tongue, that the federal court's jurisdiction posited upon the 1983 claim. If there is no 1983 claim, there is no ancillary jurisdiction. Okay, that's wrong. That is to say, the established rule is that merely losing on the merits of your federal claim doesn't mean there was no subject matter jurisdiction to hear the claim. The only way there's no subject matter jurisdiction to hear the federal claim is if the federal claim is frivolous. And my question did not posit that the 1983 claim was frivolous. It only posited that it was a loser. The cases that we cite, which involve the Kraft teddy bear and also the ski resort case out of Jackson Hole, take the view that where the federal – those cases take the view, as I understand them, that where the federal claim fails for want of jurisdiction, the court loses jurisdiction. Well, that's true, but that's premised on the federal court claim failing for want of jurisdiction. Here, my positing is that the federal claim fails on the merits just because it fails on the merits. Lack of proof of an element, for example. I think the distinction in my mind, Your Honor, is that this federal claim does not exist and cannot fail on the merits because it doesn't meet the threshold test of asserting the deprivation of a federally protected right. Suppose you assume for the moment that it does have some existence, but as Judge Fletcher said, it loses on the merits. If we take that as a premise, then I think all of us would be interested in knowing what, if any, deference goes to the state law verdict. And I confess, Your Honor, that I have thought about this question, studied the cases, tried to come to some understanding of how that would be dealt with. And my best answer is simply this. This case, from its inception, both for lack of deprivation and for lack of a federally protected interest, did not belong as a 1983 case. I think that ruling should have been made at the outset of the case. Had it been made at the outset of the case, the case would have been dismissed and the state law claims would have been tried in state court, as they should have been. I think the court acted without jurisdiction from the inception of this case. I have tried to parse down the distinction between failure on the merits, failure for failure to state a federal claim. I've studied the Jackson Hole Ski Resort case, which involved the discretionary function, the Teddy Bear Advocacy case, and a number of others. You should have studied the cement masons case that I wrote. And I did. And in this case, the only answer that I can give is, if the federal claim does not exist because the constitutional protection does not attach to this contract right, I think jurisdiction fails at the outset. And I think I've overstayed my welcome. We've touched Lujan. I'll reserve some time for rebuttal. Martha Sheehy May it please the Court, Martha Sheehy on behalf of the plaintiffs below, the appellees here, Joe and Leah McCracken. There are a couple of procedural and factual issues I want to clear up before we get any farther. First of all, all the parties stipulated that the decision on the motion to dismiss regarding jurisdiction was merits-based. It was an issue directly addressed by the district court. You'll find it addressed twice in the transcript on that motion, which is part of the record. And the motion, this is the May 7, 2002 record. This was an issue because the district court or, excuse me, the school district moved to dismiss based on Rule 12b-1. Before the hearing, the district court asked us, is that the proper motion, or should this be a 12b-6? Be prepared to argue this. And at the outset of the argument, Mr. Tolliver conceded that this wasn't a 12b-1 motion. It was a 12b-6 motion because it reached the merits. The difference between those two motions is evident to this Court. We were asked by the district court to review several of your opinions, one of which was the Black case. The difference is that the 12b-1 requires that they only look at the complaint, and it fails for lack of jurisdiction on the basis of the complaint. But in this case, the judge said there was a well-pled complaint. The plaintiffs had pled the 1983 action with its three prongs. So below, Mr. Tolliver stipulated that this was a merits-based decision. And you'll find that stipulation on pages 36 and 37 of the transcript, wherein the judge at the closing of that hearing said, here's what I'm going to do. I'm going to consider this a 12b-6 motion. I'm going to decide it on its merits. I quote, the Court stated, I'm going to limit my decision to the merits of whether or not there's a constitutionally protected interest. I'm not going to rule on, because I don't think it's right, as to whether or not there was a deprivation or due process problem, and I'm going to consider everything that's in the record today. So it will, in essence, be a motion for summary judgment on that one issue, because I'm considering matters outside the record. Counsel for the school district, Mr. Tolliver, replied, that's acceptable to me, Your Honor. And that stipulation is part of the district court's order on this motion. So it is a stipulated fact that this is a merits-based motion. In addition, Mr. Tolliver stated, in response to your question, Judge Tashima, that he did appeal from the March 20th or, I'm sorry, the May 28th judgment. Rule 3C requires specific appeal in the notice of appeal, and this notice of appeal does not appeal from the judgment. I refer the Court to the record at pages 204 and 205, which is the notice of appeal in the original excerpt. The appellant stated, Notice is hereby given that the defendant in the above entitled action hereby appeals to the United States Court of Appeals for the Ninth Circuit from the order dated March 18th, 2003, the order dated February 10, 2004, and the order dated May 27, 2004. The district court determined certain issues in this matter on March 18, 2003, on February 10, 2004, and on May 27, 2004. On May 7, 2004, the judgment in this matter was entered. On May 28, 2004, the final judgment in this matter was entered. And they attached the exhibit. Also attached to the docketing sheet meant were the issues they were raising on appeal. Nowhere did they raise the issue of the efficacy of the trial judgment, of the verdict. This is very important for a number of reasons. Oh, I also want to point to the 20th day statement that I provided, which shows the court that in this court, they also filed a notice of not ordering the transcript wherein Lockwood said, Lockwood's appeal is based upon pretrial rulings made by the district court, and its excerpts of record will be based on depositions and exhibits. That's why the trial transcript wasn't ordered, because they did not appeal from the judgment. Kennedy. Let me understand. In saying that Mr. Tolliver stipulated the district court's ruling, are you saying that he's stipulating to an existence of jurisdiction? No, I'm not. I'm saying that he stipulated that it was a merits-based decision, that the court did have the initial jurisdiction to decide on the merits under 12b-6, as opposed to the court saying, I look at the complaint and there is no jurisdiction for me to even enter into this discussion. We have conceded that this would be a merits-based decision. I was trying to figure out whether you were taking the position that Mr. Tolliver was barred from arguing that this court, the district court, lacked jurisdiction. No, he retained that argument, but he did not properly appeal it, is my position. He claimed he was appealing jurisdiction, but for a couple of reasons which I'll discuss, the appeal was inadequate because of this distinction. Before I move forward with this argument, I want to explain the distinction between the tort verdict and the summary judgment. The initial motion to dismiss, as I just read from the order, was based on one thing, and that was whether there was a protected property interest. That was the only decision made in the first motion. The second motion was a motion for summary judgment. Both parties moved. The school district moved for summary judgment on the 1983 claim. That was denied. The plaintiffs moved for summary judgment on the contract claim, and that was granted. So the contract issues were fully determined on summary judgment. They did not go to a jury at all. Well, when you say contract issues, including the amount of damages? There were no damages that we claimed under the contract, Your Honor. We only asked for enforcement of the contract. Prior to trial, we received the summary judgment order saying that the contract was valid and enforceable, and that the McCrackens would, in fact, receive the lifetime health insurance promised by the contract. One of the reasons that we have claimed that this is a 1983 action is that Montana law does not allow for the recovery of emotional distress damages or attorney's fees under the contract action. That's changed a little bit since the imposition of the – since we filed this case. You can now obtain attorney fees under the Declaratory Judgment Act in Montana. By the time we filed, we couldn't obtain emotional distress for – So you didn't ask for damages under the contract action then, but there were other state law causes of action besides contract, right? We brought a bad faith action, which we didn't pursue. Once we won on the contract, we got summary judgment on the contract. The case went to trial solely on the issue of Section 1983 and the state law equivalent of 1983. The damages that we obtained were based entirely on the 1983 action. We received only emotional distress and attorney's fees. Those were the two elements of damages. I guess you could say that those are state law and that we also brought the state law equivalent, what we call a doorwork claim. But the contract had already been determined. We did not seek any additional damages under the contract. And we did not – the contract was not at issue in the trial verdict at all. All right. So the only basis of the jury's verdict then was its finding that the plaintiffs were denied a due process under 1983, right? Yes. Well, if that – if there's some flaw there, then you're not helped by the jury verdict on the state law claim. I'm helped by the jury verdict on the state law claims. No, I'm not. I don't think I understand your question. No. The importance of the jury verdict on the 1983 claim is that the school district appeals from two interlocutory orders that are based entirely on the 1983 action. The deprivation claim was decided on summary judgment as an underlying decision in the tort verdict. And under this Court's authority, in order to appeal from the interlocutory orders which precede a tort judgment, you must appeal from the tort judgment. That's the case of Lower Elwhan Band of Skallams versus the Lumi Indian Tribe, which is a 2000 decision. Those two interlocutory orders were submerged into the tort verdict, and the tort verdict was not appealed. Now, by the tort verdict, you mean the 1983 verdict? Right. All right. So this gets us to the – I think the central question in this case is, is there – should there be a 1983 remedy for abuse of contract action? Is that what that amounts to, this case? Yes, there should be. There was in this case. There should be in this case. This case falls squarely within all of the authority concerning 1983. We go back to the essential test for whether or not there's a property interest in a contract right. And courts, including the Ninth Circuit Court of Appeals and the United States Supreme Court, have repeatedly held that there can be a protected property interest in a contract  How do you get out from under Chief Justice Rehnquist's opinion for a unanimous court in the Lujan versus G&G Firespinkler's case? This benefit is different than the Lujan benefit because it falls within a vested retirement interest. But that language is not used in Chief Justice Rehnquist's opinion in Lujan. The language he uses was quoted more or less accurately by Mr. Tolliver. That language is, in each of these cases, that is to say where a 1983 cause of action arising out of a breach of contract is cognizable under 1983, in each of these cases, the claimant was denied a right by virtue of which he was presently entitled either to exercise ownership dominion over real or personal property or to pursue a gainful occupation. Now, pursue a gainful occupation is really off the table. We're really after whether he's entitled to receive the payment fees, medical payments. So it has to come under entitled either to exercise ownership, presently entitled to exercise ownership dominion over real or personal property. Justice Rehnquist then goes on to explain in that same paragraph that does not mean entitled to receive payments in the future. So I don't see how this case qualifies as a 1983 claim under this language. On its face? I'm sorry. I don't have that language in front of me. But the language that you discarded, the language about pursue employment? Yes. Pursue a gainful occupation. That is at issue here, Your Honor, because by the terms of this unique contract, he had to retire. If he took other employment, he lost the benefit. Initially, this benefit was made, the 1992 contract and then the retirement benefit, were given to Joe McCracken as an enticement to stay with Lockwood School District to refuse offers from other districts who wanted him to work for him. They enticed him to stay by saying, if you stay with us until retirement. For another six weeks. Well, the final benefit, which was a retirement benefit, yes, it was only six weeks. But that doesn't change the nature of the benefit, which is from 1995, when he retired, until 2001, he did, in fact, lose his opportunity to pursue other employment because had he accepted employment and come out of retirement, he lost the benefit. And so the evidence below was uncontroverted that Joe McCracken did, in fact, lose opportunity to be employed in order to keep the effect of this contract. So this is a unique situation, but it did impact his ability to pursue employment. So your argument is that this qualifies as a 1983 claim under the second clause that I was inclined to put to one side, to pursue a gainful occupation. Yes. And you're arguing that this breach of contract prevents him from pursuing a gainful occupation. Yes. Well, he was — he has not — he has turned down job offers from the time of the benefit through this litigation in order to retain the benefit. That's correct. Okay. I've got a different question, one that really is not argued by the — put forward by the court in Lujan and not argued in the briefs. It's — the court — the Supreme Court is obviously having trouble with where the line is between an ordinary breach of contract case cognizable only under state law and a breach of contract such as to give rise to a 1983 claim. The argument for a 1983 claim is that it's a deprivation of property without due process of law and there needs to be some sort of a prior hearing or at least a sufficient remedy post hoc after the breach. The ordinary case in which a 1983 remedy is available is a case where you're entitled to the contractual benefits unless something — unless, for example, you misbehave or unless a certain event occurs or so on. And the employer says, well, this event has occurred. You've been a bad person or whatever it is. And then the argument is, but you have to have a hearing before termination to determine whether it happened. Here there is no such triggering event. That is to say, this is not — we're not paying because you didn't do X. They're just saying, we're not paying because we don't have to. Right. So what hearing are we even talking about? How can this even come in under the idea of you need to have a due process hearing before termination? What's there to hear? Under Montana law, an employee — a public employee who is going to be discussed at a public board meeting must be notified of the proceedings and given an opportunity to publicly participate in that meeting. He can close it for privacy concerns, but he had a right under Montana law to be at the August 29th hearing at which they terminated his benefits and to state his case. And what would — I'm sure you have — A minor point of fact. Had not Mr. McCracken already told counsel for the board that he didn't want to talk to the board? That was hotly contested at the trial. That was one of the main aspects of the trial because, of course, it was the deprivation, the lack of notice and hearing that became an issue at the 1983 trial. There was a conflict in testimony regarding that. The jury clearly believed that Mr. McCracken was not given notice. Counsel told — the day that counsel told him there would be a meeting, the meeting had not yet been scheduled. And so it was clear that he had never been given notice of the time and place for the hearing, which is a requirement under Montana's open meeting law, 23201 of the Montana statutes. So we proved at trial, which is not at issue here, that the notice was inadequate and that he was not given his hearing. I would like to address the Court's concerns about what if you find that there's no federal question here under the protected property interest. There are four independent bases for jurisdiction, for continuing jurisdiction over the state law claims. The first we've talked about. I believe that this falls within the Lujan strictures, and I also believe that this is a present entitlement under the other cases that have been decided. I don't think Lujan did away with all of the cases that find that a retirement benefit is, in fact, a protected property interest. But that's just one basis. The other is the well-pled complaint rule. It's not sufficient in this case for the district to say this isn't a very good 1983 cause of action. They have to prove that it was wholly frivolous or that it was pled for an improper purpose. Neither of those have been established, and under the well-pled complaint rule, this Court had jurisdiction, first of the federal court action, which was sufficient to exercise ancillary jurisdiction or supplemental jurisdiction over the state law claims. Third, we've conceded, by stipulation in the record, that this was a merit-based decision regarding the property interest. Can I short-circuit this, given that the time is running, and I suspect on the jurisdictional issue you're going to do okay. But what happens if we conclude that on the merits, the 1983 claim is in front of us on appeal, and we conclude that there is no good 1983 claim, for example, concluding that it doesn't come within the categories of Lujan? What becomes of the judgment? I think I heard an answer already, but I want to make sure that really is your answer. I think I heard your answer saying if the 1983 claim disappears, the jury award also disappears, because it is promised upon that. No. You didn't say that. Okay. This Court does not have jurisdiction to vacate that judgment, because Rule 3C required a specific appeal from the judgment. And Rule 3C is jurisdictional in nature. The briefs don't discuss the judgment. The only reason, the only manner in which they have discussed the judgment at all is a one line in the opening brief that says, we ask you to vacate all proceedings below. There is no jurisdiction in this Court under Rule 3C to touch that verdict. It has not been appealed from specifically. And let's see, I have the case on me. In the 28-day notice to the Court, I cited the cases that talk about the jurisdictional nature of Rule 3C. And it's Dawson v. City of Seattle. The requirements of specific notice cannot be waived even for good cause shown. Looking at that notice of appeal, they appealed from three orders. They did not appeal from the judgment. Looking at the other documents filed. Well, just a minute, though. One of the so-called orders they appealed from, the May 27th, was really a judgment, right? No. It was an order from the district court telling the clerk how to enter the judgment. But the judgment that expressly states the tort verdict of $227,000 is a separate document, and they did not appeal from it. And they did the notice of appeal does not reference that document. And it's shown from the other parts of the record, specifically the notice of not ordering the transcript, that they are not appealing the tort judgment. Well, what signification do you give to appealing from the May 27th order? The May 27th order referenced the summary judgment. That's why they appealed from it. There were three orders that referenced the order. It also references the judgment of $227,000. But it is not the judgment. It's telling the district court how to enter the judgment because there were two different things. There's the summary judgment on the contract, and there's the tort verdict. Well, I haven't, you know, I haven't, to be honest with you, I haven't researched this very thoroughly. But my recollection is the law on construing notices of appeal is that they should be construed very liberally, if it's evident from the notice of what the intent of the appellant is. First of all, it is evident that the appellant did not appeal from the tort judgment. It is not they could easily have stated that they are appealing from May 28th tort judgment, and in the notice of the recorded of the ordering of the transcript, they stated we're appealing pretrial rulings, and they paid the judgment. The effect of Rule 3C states that because this is jurisdictional, it has to be strictly construed. There is no mention in these briefs in the briefing. We have had no opportunity to brief the efficacy of the tort judgment because it wasn't raised. And this Court has held under Rule 3C and also under the matters that are raised in the brief that you can't raise things for the first time on reply brief. They've never raised the tort judgment. So if this Court reverses, says there's no prong here, the first prong is missing, you didn't have a valid 1983 action, the appropriate resolution is to say, however, you did have jurisdiction over the supplemental claims because it was a merit-based decision on the 1983 action, and to move on to decide whether the state law claim survives. And the contract claim, the district court did a terrific job of describing all of the reasons why the contract was interpreted in favor of Mr. McCracken. I won't belabor the point. But let me ask you this. I'm finding myself a little baffled by this notion of what's appealed and what's not appealed and what's properly in front of us on appeal and what is not properly in front of us on appeal. If we hold that the district court was wrong in allowing the 1983 claim to go forward because, for example, it doesn't qualify under Lujan as a 1983 claim. And if we also think, and I understand you disagree, and I'm certainly not asking you to concede to what you disagree with, but if we conclude that the entire judgment is on appeal before us, what, if anything, is left of that judgment if we say that, well, the jury found liability and awarded some damages based on 1983. Well, but if we say that the tort judgment, even if appealed from it, is right, and that's a question of state law and we're leaving it alone, what is left of the All of it. Because we pled it under two different, we went to the jury under Dorwart, Montana law, which is not a 1983 claim. It's a separate state law cause of action. It mirrors the 1983 claim. But it is a state law claim that we would have had access to. And also the bad faith claim would have survived. And what's left of the attorney's fee award? All of it, because of the Dorwart cause of action. We have a state law claim that was similar to the 1983. And you're entitled to attorney's fees under state law? Yes, we are. The Dorwart claim has not been widely litigated, but I believe that, yes, we were entitled to attorney's fees under state law. And during the pendency of this action, the Montana Supreme Court decided a case called Sutton v. Farmwest Bureau. There's a 2003 decision of the Montana Supreme Court that also allows attorney's fees under the declaratory judgment action. And so I'm kind of uncomfortable with the fact that we never got to brief the Dorwart verdict because it has not been properly raised. The Dorwart verdict, I would like to have the opportunity to go back to the record and really look at what exactly was the basis of the Dorwart verdict. But I know that, for a fact, we brought 1983, the Dorwart claim, and I think we went forward on that date, although I'm not sure. Okay. I have a little more time. No, we took you over. Oh, okay. Thank you. The clock is now climbing. Thank you. If the court determines that there is federal jurisdiction surviving under cement I would ask the court to review the district court's decision with respect to the state law contract. Which decision are you talking about? The state law contract issues where the court rejected our argument that the Montana statutes described and circumscribed the power of the school board to contract and make promises beyond certain terms. You're talking about the summary judgment? Yes. All right. Let me ask you a question about the jury verdict. What is your understanding of which claims or causes of action went to the jury? Certainly the 1983. The 1983 claim, there was instructions given as well under a constitutional tort recently established in Montana by a Supreme Court decision called Dorward. That's a Montana constitutional tort claim? Yes. Okay. I also believe that the jury was given instructions on bad faith, which is another Montana tort remedy that arises from contract. And that's a separate claim or a separate cause of action? I believe it's a separate cause of action, Your Honor. Is that sort of like a tort action for a bad faith breach of contract? Yes, Your Honor. Thank you. And whether or not you've appealed from the judgment, I don't see arguments in your brief directed to those state law causes of action, except for the contract. I believe the state law causes of action, the way the verdict form was presented, you can't tell how the jury allocated its award it found for the plaintiff on all the causes of action under very difficult instructions for the defense. But it does not state whether the award is under the 1983 claims or the other claims. Right. Now let me make... I believe counsel... I don't see in your brief arguments on the merits of the jury decision on these tort claims. On the doorwork claims or the breach of bad faith? Right. No. Our position on the brief was the district court should not have asserted jurisdiction in all of this case, and the jury verdict is void because the court acted without jurisdiction. Right. I don't recognize the merits of those state tort law decisions. I think I, as counsel for the McCrackens, took the view these were 1983 verdicts because of the... But of course, the jury verdict, as you just said, is 1983 and state tort law. There's right there in the specific instructions. Yeah. They are. All right. So doesn't that make... To follow up now, Ben, doesn't that mean that even if we were to come to the conclusion that there's no 1983 claim here under Lujan, so the 1983 portion of the jury verdict is void, it still leaves standing the verdict as far as it addresses the Montana constitutional tort and the bad faith claim, doesn't it? My first answer is I think not because of the jurisdictional question. Well, we have... Well, the district court has jurisdiction because of the properly pled claim under 1983. Just because it's, you know, thrown out doesn't mean there's no jurisdiction in that ancillary jurisdiction or supplemental jurisdiction over the state law claims. And I think under the Jackson Hole case decided by the Ninth Circuit and the other cases cited in our brief, I tend to disagree with... I recognize I'm not... In other words... So I'm taking your point as a given, sir, if I may. And perhaps fairness is not the right thing to argue in an appellate court. But given the way this case proceeded at trial, where the defendant stands before the jury with the jury instructed, the court finds that there has been a deprivation of a federal constitutional right as a matter of law. The court finds, the court finds through the summary judgment ruling, these defendants, if Lujan and its companion cases do not allow a 1983 case, these defendants will not have a fair trial on the merits. Because? Why? Because... Because he had no notice that they... Because they were instructed by the court that the defendants had acted wrongfully in breaching the contract, which I think was an erroneous ruling, that the defendants had deprived the plaintiffs of a constitutional right. That was an instruction from the court that the deprivation was established as a matter of law. Two of the three elements were instructed. That the property interest was a protected property interest under the federal constitution. And the only question presented to the jury under the court's instruction was whether or not the district had, in effect, given a pre-April 29th hearing to Mr. McCracken. Under those circumstances, this verdict, this trial, if Lujan applies, this trial was not a fair trial for these defendants. Is it too late for the defendants to say they too were entitled to due process? Let me ask you another related question. The name of the case is what? Dorwick or something like that? Dorwick. Now... You are. Now, under that case, do you have a position on whether or not a successful plaintiff would be entitled to attorney's fees? Or you have no position because you're... I think the case speaks for itself, but it's my recollection of the Montana law under Dorwick, the answer is no. There is a ruling on the point, Your Honor. The case does speak to it, as I recall. You mean this case speaks to attorney's fees? Dorwick. Attorney's fees? Do you have a citation for that case, by the way? Yes, I do. My memory isn't what it might be, and I don't know that I am remembering correctly. Let me say that I remember that Dorwick discusses the point. It is my recollection that it... Well, we'll certainly read it, so if we have the citation, that would be very helpful. It's my recollection that it holds there is not a provision for attorney's fees. Well, I think I am going to be in exactly the same position as my colleague. Relatively recent Montana Supreme Court case. All right. I just don't remember the case being cited, but that's fine. We'll try to find it. I may have just a moment. Okay. We're allowing both to go over, but... And I will be very brief. Because of the compact time allowed for argument, we didn't get a chance to discuss the construction of the Montana statute in detail. How that statute reads, the fact that it has been applied by the Montana Supreme Court in the Gordland case, which is cited in the brief, and rather strictly applied, although not on the same point. We have a situation where a state agency operating with an elected board, expending public funds, is given certain powers, and then certain of those powers are circumscribed. This specific circumscribed power is the power of the board to deal with its superintendent, the power of the board to deal with its chief executive officer. You're referring to the limitations on the time period? Or the contracting with the superintendent. Yeah, that's covered in your brief. And I think this case, if I may say, is an illustration of why that statute exists. That statute is covered in your brief. All right. This district provided a great financial obligation to a favored son that was its chief executive officer. Does that cover the payment of, I think, $19,000 in extermination? We haven't litigated that issue, Your Honor, but I think that payment was an improper gift of public money. But no objection was made about it. It wasn't. I withdraw that statement. I haven't analyzed that issue. But I don't think that payment was proper, intuitive. Thank you. I thank both counsel for their argument. The case of McCracken v. Lockwood School District No. 26 is now submitted for decision. We have one more case left on the oral argument calendar. If you would just give that to the court of deputies, that would be. Thank you very much. Yes, thank you for the citation. The next and last case for the argument calendar this morning is United States v. Marquez-Lerma and other defendants.
judges: Tashima, W. Fletcher, Pollak